## No. 19,643.

LEMBKE PLUMBING AND HEATING, ETC., ET AL. *v.*
IRVING J. HAYUTIN, ET AL.
(366 P. [2d] 673)

Decided November 13, 1961.   Rehearing denied December 18, 1961.

Messrs. Wagner and Wyers, Mr. Jackson M. Seawell, for plaintiffs in error.

Mr. Fred Winner, Mr. William G. Berge, Mr. Warren O. Martin, for defendants in error.

*In Department.*

Opinion by Mr. Justice Frantz.

Although inaccurate in insignificant detail, as affecting this suit, we shall treat Hayutins as acting together in our consideration of this case. Their complaint was in two counts based on separate acts of negligence. On February 26, 1953, Lembke undertook by written contract to install plumbing in Hayutins' new house. As shown later, the contract is unimportant in the issues here except to show the employment.

Failure to protect a pipe in a concrete wall is the negligence involved in the first claim; a broken tube resulting from the act of Lembke's employee in the course of a repair job performed some eighteen months after the

original contract is the negligence referred to in the second claim. Negligence is alleged generally in both counts, but the proof showed the acts of negligence as just described.

Lembke denied negligence and further set up various affirmative defenses, including Hayutin's negligence as the sole proximate cause of the damage, and, in a separate defense, their contributory negligence. Lembke also seeks to invoke the contract and its terms as an absolute defense whatever the form of the action.

The evidence covered a wide range and the trial court made elaborate findings. However, the following brief statement of the facts is sufficient for this review.

Both claims center about a pit adjacent to and southerly from the building. It had eight-inch concrete walls. The water supply is a well from which the water is piped to and through the westerly wall of the pit and delivered to a water heater and pressure tank contained in the pit. From these appliances the water is piped through the easterly wall to the residence. By means of one vertical and two horizontal sections of pipe, connected by elbows, the water is conducted from the pit to a tee (T) fitting or joint beneath the floor. This fitting is about six feet, following the pipeline, from the easterly pit wall, and some inches from the westerly wall of the house. The stem of the tee projects vertically through the floor and into the interior.

The pipe entry into the west wall was protected by a casing or bushing larger than the pipe, to permit minor movement of the wall without damage to the pipe. No such protection was provided on the easterly side; the pipe was firmly embedded in the cement. Sound and acceptable plumbing practice required protection on the easterly side in the same manner as that provided on the westerly.

The easterly pit wall subsided, throwing the pipe off horizontal and angling downward. The movement and consequent stress followed the pipeline to the tee and

severed the connection, and water escaped and by perco-
lation saturated the clay formation beneath the house.
The clay, about nine feet deep, is of such character that
it expands and heaves when saturated. As a result of
this expansion the house was dislocated and extensively
damaged. The floor cracks commenced immediately
above the tee and radiated therefrom to various parts of
the house. This pattern was significant as it indicated
the cause and the place of the escapement of the water.

Concerning the second claim, in March of 1955 the
heaters were giving trouble and the Hayutins employed
Lembke to make repairs. One heater was within the pit
and Lembke's employee removed the cover, entered the
pit and stepped upon, crushed and flattened a copper
gauge tube therein. The circumstances indicated that
the damage occurred in that manner. No one had pre-
viously entered the pit, and within a few days after such
entry water commenced to and did accumulate in the pit
to a depth of several feet. The pit was drained and the
damaged gauge tube discovered.

■ The written contract was on a printed form sup-
plied by Lembke. According to its terms, it " * * * law-
fully expires one year from date." Lembke urges that
this provides a one year statute of limitations. A con-
tract, whether "expiring" lawfully or unlawfully, does
not provide a substitute statute of limitations for acts of
negligence in the absence of an express provision there-
for. The contract here imposes no duty on Lembke to
exercise due care and caution and the necessary degree
of skill involved in a plumbing installation, provisions
implied in every such contract. But, as shown by the
authorities later cited, the duty upon Lembke was even
more fundamental, to-wit: the common-law obligation to
exercise due care, caution and skill resting on all per-
sons and in all undertakings when the rights of others
are involved. Although this duty may not be contractual,
the law allows no vacuum and imposes the duty. *Dean
v. Hershowitz,* 119 Conn. 398, 177 A. 262.

Lembke argues that the contract and its terms are the "exclusive remedy." It provides in substance that "defects" shall be remedied by Lembke after written notice from Hayutin. The defect, the failure to protect the exit pipe, was made known to Lembke as soon as discovered; in fact, he (or his employee) discovered it after tunneling under the foundation. He demanded no writing. It was discoverable to Hayutin only after its disastrous consequences were known. Damage to the tube was in the course of a repair job unconnected with the 1953 contract and it no doubt augmented the saturation and was at least a contributing proximate cause.

The contract at various points speaks of "acceptance" by Hayutin. If applicable, he did nothing that would operate as a waiver or as an estoppel to assert his claim for violation by Lembke of his common law duty.

It has the usual provision that it contains all the understandings, agreements and warranties express or implied intended to be applicable. This in context has reference to contractual undertakings only and is ineffective to abrogate or modify the common law duty.

Various alleged errors in the trial are set forth in the briefs. Clevenger, a soil expert and an employee or member of an engineering firm employed by Lembke's insurer, inspected the premises, drilled test holes, conducted laboratory tests and made a written report of his findings. A copy of this report was supplied to counsel for Hayutin long before the trial. Clevenger was called by Hayutin's counsel for cross-examination under Rule 43 (b), R.C.P. Colo. Objection was made and overruled that he was within none of the categories mentioned in the rule and cross-examination was not permissible. This ruling is urged as error. If so, it was not prejudicial, as the circumstances surrounding its use during the trial show.

The cross-examination consisted of quotations from the report with an inquiry whether the recitals were accurate, to which Clevenger replied in the af-

firmative, explaining his answers in a few instances. He was called as Lembke's witness and his testimony was in line with his answers on the earlier cross-examination. The cross-examination might have been deferred to follow Clevenger's direct examination and would then have been free of the objection. Under the circumstances shown, the error, if any, was harmless.

The report itself was received in evidence primarily to aid the court in understanding and weighing Clevenger's testimony on technical problems. One paragraph was deleted as based on hearsay. It was useful for the purpose mentioned and was substantiated by Clevenger's testimony and its receipt in evidence was proper. No privilege or "work product" was involved.

■ Plaintiff's witness Punshon qualified as an engineer and as an expert and was asked a hypothetical question. It was objected that the hypothesis included matters not in evidence. Considerable time was devoted to this hypothetical question and in its final form it included matters and elements in evidence and none other. True, some of the elements and factors were in dispute, but it is not essential to such a question that the testimony establishing the hypothesis be uncontradicted.

■ A number of photographs of the damaged building were admitted for "what they do show," as the trial court stated. The court with counsel had inspected the premises. The objection was that in a preliminary statement and in explaining the photographs Hayutin said that one or more of them were not exact representations. Photographs may be inexact due to perspective and optical limitations. They need not be exact. The objection here (not made in the trial court) was as to the time the pictures were taken.

The time when the photographs were taken does affect their weight as evidence. But there was an abundance of testimony without the pictures to establish the damage, the origin and cause thereof, and its extent. Moreover, the trial judge viewed the premises and ob-

served that the damage to the structure appeared greater to the naked eye than as revealed by the photographs. There was no error in admitting the photographs in evidence.

The proximate cause of the damage is disputed. The fact of the saturation and the expansion of the clay as the cause of the damage is not in dispute. But, says Lembke, the saturation could well have resulted from natural precipitation and insufficient surface drainage away from the house. The court was dealing in probabilities; actual subsurface soil conditions and phenomena are not apparent from casual inspection. Although there was some testimony (a suggestion by Clevenger) to support this contention, the trial court justifiably considered that the saturation did not result from rain and snow. There was no evidence that this natural moisture reached a volume and amount necessary to produce the saturation. The wetting of the clay and the disturbance of the foundation were on the side of the house next to the pit and the tee joint. Clevenger's drill holes so disclosed and also disclosed that there was no abnormal water content on the other three sides, where the soil was found to be competent to support the building.

Lembke relies heavily on *Mosko v. Walton,* 144 Colo. 602, 358 P. (2d) 49. The case may be distinguished on several grounds, but only one aspect need be considered. Said the court in Mosko:

"Where the defendants show that it is as likely that injury occurred from one cause as another, and that the defendants are not responsible for one cause, the burden of establishing the proximate cause has not been fulfilled."

Here the equal probabilities are not found that appeared in the Mosko case.

The trial court apparently considered precipitation as the source of the saturation highly improbable. We agree. It may be regarded as a mere possibility, but that is insufficient. It is a fact, of course, that two causes

were shown in the instant case, two leakages and sources of water, for both of which Lembke was responsible. That the damage resulted from two causes, for both of which Lembke was the moving force, makes immaterial which was the proximate cause. *Lake v. Emigh,* 121 Mont. 87, 190 P. (2d) 550; *Kraut v. Frankford, etc., Co.,* 160 Pa. 327, 28 Atl. 783.

Lembke urges contributory negligence in that Hayutins did not have soil tests made and provide means to avoid or neutralize saturation of the soil. If tests had been made, they would have shown only that the soil was adequate to support the house in the absence of an abnormal water content. This the evidence clearly established. There was no constant or natural ground water; this was disclosed by Clevenger's drill holes. Hayutins were not bound at the time of construction or prior thereto to anticipate defective plumbing and leakage and to make provision therefor.

Having determined that the Hayutins' action is for negligence and that the contract is not a bar thereto, the law involved is relatively simple.

■ An injured party in such a case as this may elect to proceed ex contractu for breach or ex delicto for negligence. *Fitzsimmons v. Olinger Mortuary Association,* 91 Colo. 544, 17 P. (2d) 535; *Maercklein v. Smith,* 129 Colo. 72, 266 P. (2d) 1095; *Cady v. Fraser,* 122 Colo. 252, 222 P. (2d) 422.

In 38 Am. Jur. §20, p. 662, it is stated:

"Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract. In such a case, the contract is mere inducement creating the state of things which furnishes the occasion of the tort. In other words, the contract creates the relation out of which grows the duty to use care."

In the recent case of *Lewis v. Scott,* 54 Wash. (2d)

851, 341 P. (2d) 488, defendant negligently installed a furnace under a written contract. It was argued that the contract was the exclusive remedy. The court said:

"What we have heretofore said with reference to breach of duty does not emanate from a breach of a contractual relationship. In the law of negligence, liability attaches to the wrongdoer because of his breach of duty in performing his work negligently, which results in injury to others. In *Hunter v. Quality Homes* (Del.), 68 A. (2d) 623, the court said: ' * * * Matters of common knowledge warn the installer that, if his work is done negligently, some one is likely to be injured. Faced with this warning, he assumes a certain duty to others — the duty to do the work with reasonable care and diligence — for the breach of which the law imposes a liability. This liability is based not upon contract but upon negligence.' "

Authority to support the rule might be almost indefinitely multiplied. *Hunsicker v. Buckeye Union Gas Co.,* 95 Ohio App. 241, 118 N.E. (2d) 922, is typical.

Where, as in this case, the contract was prepared and presented by one party for signature, ambiguities are to be resolved against him. It is also well established that contracts limiting liability for negligence are to be strictly construed. Authority to support these propositions might be cited. However, if, as we believe, the contract is inapplicable except to show the employment, interpretation is unnecessary.

The amount and extent of the damage was proven by qualified professional appraisers. The measure used was the market value before and after the damage. This was entirely proper. *Dandrea v. Board of Commissioners,* 144 Colo. 343, 356 P. (2d) 893. The procedures employed to fix the two values were the usual ones. A detailed written appraisal, authenticated and supplemented by the testimony of one of the appraisers, includes discussion of all the factors and considerations involved and a finding of net loss to plaintiff of $26,000.00.

The findings and judgment below are supported by the evidence and the law, and the judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE DAY concur.