COSMOPOLITAN HOMES, INC.; Hutchinson Construction Company; and Builders Research & Engineering Co., Petitioners,

v.

William E. WELLER and Shirley Mae Weller, Respondents.

No. 80SC260.

Supreme Court of Colorado, En Banc.

May 23, 1983.

Calkins, Kramer, Grimshaw & Harring, Richard L. Harring, Denver, for petitioners.

Omer Griffin, Denver, for respondents.

DUBOFSKY, Justice.

We granted certiorari to review the Court of Appeals' holding in *Weller v. Cosmopolitan Homes, Inc.,* 44 Colo.App. 470, 622 P.2d 577 (Colo.App.1980) which allowed subsequent purchasers of a home to assert a claim for property damage to the structure allegedly caused by the negligence of the homebuilder. We affirm the judgment of the Court of Appeals but limit the negligence claim to latent defects which the purchaser was unable to discover prior to purchase.

The plaintiffs, Shirley Mae Weller and William E. Weller, are the fourth owners of a house designed, built and sold in 1973 by the defendants Cosmopolitan Homes, Inc., Hutchinson Construction Company, and Builders' Research Engineering Company (the builders). Although the Wellers seek to recover for deficiencies in workmanship, design and materials in the house attributable to negligent design and construction by the defendants, the facts alleged in the complaint relate to cracking in the foundation from movement or settling of the house which had not occurred at the time the Wellers made their purchase on January 4, 1977.

The district court dismissed the Wellers' complaint on the ground that there was no privity of contract between the defendants and the Wellers because the Wellers were not the first purchasers or users of the house, and therefore the defendants did not owe the Wellers a duty of reasonable care. The Court of Appeals reversed the district court ruling, holding that regardless of lack of privity of contract, the purchaser of a used home may recover for property damage caused by the negligence of the builder.

On certiorari review, the defendants argue that a claim for negligence against a builder is indistinguishable as a matter of proof from a claim of breach of implied warranty of habitability.[1] The defendants therefore assert that the builder should not be held liable in a negligence action brought by a subsequent purchaser because case law in Colorado has limited an implied warranty's protection to first purchasers. We disagree with the defendants' assertion. An obligation to act without negligence in the construction of a home is independent of contractual obligations such as an implied warranty of habitability. Our cases allow a subsequent home owner to maintain an action against a builder for negligence resulting in latent defects which

1. The plaintiffs' claim was grounded in negligence; they did not seek relief on a builder's implied warranty of habitability.

the subsequent purchaser was unable to discover prior to purchase if the action is filed within the statute of limitations set out in section 13–80–127, C.R.S.1973 (1982 Supp.).

## I.

This Court defined an implied warranty of fitness and habitability for purchasers of new homes in *Carpenter v. Donohoe,* 154 Colo. 78, 388 P.2d 399, 401–402 (1964):

> An action for damages for breach of warranty, whether express or implied, involves the relations between the parties arising out of contract.... There is an implied warranty that builder-vendors have complied with the building code of the area in which the structure is located. Where, as here, a home is a subject of sale, there are implied warranties that the home was built in a workmanlike manner and is suitable for habitation.

We have limited the class of purchasers entitled to the contractual protection of the implied warranty to first purchasers. *See, e.g., H.B. Bolas Enterprises, Inc. v. Zarlengo,* 156 Colo. 530, 400 P.2d 447 (1965); *Gallegos v. Graff,* 32 Colo.App. 213, 508 P.2d 798 (1973).[2]

However, the "contractual obligation is not the touchstone of civil liability in tort. It is only the matrix from which an independent tort obligation may arise." *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313 (Colo.1980). A contractual obligation gives rise to a common law duty to perform the work subject to the contract with reasonable care and skill. *Id.; Lembke Plumbing and Heating v. Hayutin,* 148 Colo. 334, 366 P.2d 673 (1961). The fact that a contract may have existed between a builder and the original purchaser of the home does not transform the builder's contractual obligation into the measure of its tort liability arising out of its contractual performance. *Metropolitan Gas Repair Service, Inc. v. Kulik, supra; Lembke Plumbing and Heating v. Hayutin, supra; Wright v. Creative Corp.,* 30 Colo. App. 575, 498 P.2d 1179 (1972). *Metropolitan Gas* involved the duty of a heating contractor to exercise reasonable care and skill in the installation of a new part in a heating system, including a safety inspection of the boiler, and *Lembke Plumbing* concerned the failure of a plumbing contractor to exercise reasonable care and skill in the installation of a plumbing system in a new house, resulting in structural damage.[3] The principle enunciated in both cases— that a negligence claim, not limited by privity of contract, may lie against a contractor—requires a builder to use reasonable care in the construction of a home in light of the apparent risk. *Metropolitan Gas Re-*

---

**2.** *But see Sloat v. Matheny,* 625 P.2d 1031 (Colo.1981) (one who builds for himself but changes his mind and sells to another gives warranties to first occupier of the home); *Duncan v. Schuster-Graham Homes, Inc.,* 194 Colo. 441, 578 P.2d 637 (1978) (where a builder repurchases used home and then resells, implied warranty extends to a subsequent purchaser); *Utz v. Moss,* 31 Colo.App. 475, 503 P.2d 365 (1972) (where house was intended for resale to consumer although originally purchased by realty company, warranty extends to consumer).

**3.** The plaintiffs in *Lembke,* the first purchasers of the house, had a written contract with the defendants. However, none of the language in *Lembke* limits the common law obligation to exercise due care to the first purchasers of the house or to persons in privity of contract with the defendant. In fact, the court in *Lembke* describes the defendant's duty as "the common-law obligation to exercise due care, cau-

tion and skill resting on all persons and in all undertakings when the rights of others are involved." *Lembke Plumbing and Heating v. Hayutin,* 366 P.2d at 675. In so stating, *Lembke* impliedly overruled *Hartwich v. Crotty, et al.,* 131 Colo. 69, 279 P.2d 413 (1955), which held that lack of privity of contract prevented subsequent purchasers from asserting a cause of action for negligence against a contractor. We now explicitly overrule *Hartwich.* In *Metropolitan Gas Repair Service, Inc.,* the decedent had contracted with the repair company to repair the heating system. In the action brought by the decedent's representatives, the issue was whether the duty of the defendant was limited to the contractual repairs, or whether it included an inspection of the safety system for the boiler. We held that the defendant's duty of care was not limited by the contract.

pair Service, Inc. v. Kulik, supra; W. Prosser, The Law of Torts § 53 (4th ed. 1971).[4]

The apparent risk encompasses one who foreseeably suffers personal injury as a consequence of builder or contractor negligence. In DeCaire v. Public Service Company, 173 Colo. 402, 479 P.2d 964 (1971), subsequent purchasers of a house had a negligence claim against the gas company for failure to exercise due care in servicing the furnace system, resulting in personal injury and death from carbon monoxide poisoning. In Wright v. Creative Corp., supra, a subsequent purchaser could recover for injuries suffered by his minor child who ran into a negligently installed sliding glass door. The question remaining for us to decide in this case is whether a subsequent purchaser can state a claim against a builder for latent defects in a residence caused by the builder's negligence.[5]

## II.

A number of cases from other jurisdictions allow a subsequent purchaser to state a claim against a builder for negligence in the construction of a home: Coburn v. Lennox Homes, Inc., 173 Conn. 567, 378 A.2d 599 (1977) (subsequent purchasers may state a claim in negligence for latent defects, although the implied warranty does not extend to them); Terlinde v. Neely, 275 S.C. 395, 271 S.E.2d 768 (S.C.1980) (subsequent purchasers may bring claims for latent defects under either implied warranty or negligence theories); Brown v. Fowler, 279 N.W.2d 907 (S.D.1979) (subsequent purchasers may state a claim for negligence against a builder, although implied warran-

ties do not extend beyond the first purchaser); Moxley v. Larimee Builders, Inc., 600 P.2d 733 (Wyo.1979) (subsequent purchasers may sue for breach of implied warranty as well as state a claim in negligence). See Simmons v. Owens, 363 So.2d 142 (Fla.Dist. Ct.App.1978); McDonough v. Whalen, 365 Mass. 506, 313 N.E.2d 435 (1974); Steinberg v. Coda Roberson Construction Company, 79 N.M. 123, 440 P.2d 798 (1968); Comment, Builders' Liability for Latent Defects in Used Homes, 32 Stanford L.Rev. 607 (1980); Liability for Soil Problems in Residential Construction, 7 Colorado Lawyer No. 8 at 1311–1320 (August 1978). See also Elden v. Simmons, 631 P.2d 739 (Okl.1981) and Barnes v. Mac Brown and Company, Inc., 264 Ind. 227, 342 N.E.2d 619 (Ind.1976) (extending implied warranty of habitability to subsequent purchasers).

At least two states have refused to extend the negligence cause of action to subsequent purchasers. Redarowicz v. Ohlendorf, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982) (refusing to extend negligence claim to subsequent purchasers on the basis that a plaintiff cannot recover solely economic losses in tort, but extending implied warranty of habitability to subsequent purchasers); Crowder v. Vandendeale, 564 S.W.2d 879, 881 (Mo.1978) ("liability imposed for mere deterioration on or loss of bargain resulting from latent structural defects is contractual"). The results in both Illinois and Missouri turn on case law in each jurisdiction which prevents recovery in tort for economic loss. Colorado precedent is not so limited. Tamblyn v. Mickey & Fox, Inc., 195 Colo. 354, 578 P.2d 641 (1978);

---

**4.** This Court assumed in H.B. Bolas Enterprises, Inc. v. Zarlengo, supra, that a negligence claim could be stated against a builder. In Bolas, the plaintiffs were subsequent purchasers but there was no evidence that the named defendant was the builder. In Tamblyn v. Mickey & Fox, Inc., 195 Colo. 354, 578 P.2d 641 (1978), the first purchasers of a home brought an action for damages "alleging that the respondents had negligently performed certain engineering work" which resulted in a cracking foundation. We said, "It is irrelevant that the Tamblyns' claims against these respondents are based on negligence, rather than breach of contract or warranty." 578 P.2d at 644.

**5.** We agree with the conclusion of the Indiana Supreme Court that there is no rational reason to distinguish between negligence resulting in personal injury and negligence resulting in property damage. Barnes v. Mac Brown and Co., 264 Ind. 227, 342 N.E.2d 619 (Ind.1976). Attempts to distinguish a cause of action for property damages as one sounding exclusively in contract because the damages represent an "economic loss" are unpersuasive. Logically, both injury to one's person and injury to one's property result in economic loss. Id.

*Lembke Plumbing and Heating, supra; see also Sabella v. Wisler,* 59 Cal.2d 21, 27 Cal. Rptr. 689, 377 P.2d 889 (1963).

■ The policy supporting the extension of the negligence remedy to a subsequent purchaser is based on many of the reasons for implying a warranty of habitability to the first purchaser. In *Duncan v. Schuster-Graham Homes, Inc.,* 194 Colo. 441, 578 P.2d 637 (1978), we described the purpose of the implied warranty of habitability as affording

> home buyers protection from overreaching by comparatively more knowledgeable builder-vendors. An experienced builder who has erected and sold many houses is in a far better position to determine the structural condition of a house than most buyers. Even if a buyer is sufficiently knowledgeable to evaluate a home's condition, he rarely has access to make any inspection of the underlying structural work, as distinguished from the merely cosmetic features.

578 P.2d at 638–639. As the court noted in *Simmons v. Owens, supra,* 363 So.2d at 143:

> The ordinary purchaser of a home is not qualified to determine when or where a defect exists. Yet, the purchaser makes the biggest and most important investment in his or her life and, more times than not, on a limited budget. The purchaser can ill afford to suddenly find a latent defect in his or her home that completely destroys the family's budget and have no remedy for recourse. . . .

Moreover, given the mobility of most potential home owners, it is foreseeable that a house will be sold to subsequent purchasers, and any structural defects are as certain to harm the subsequent purchaser as the first. *Brown v. Fowler, supra.* We see no reason for disallowing a subsequent purchaser to state a claim in negligence.

■ Although some states have allowed both a claim for negligence against a builder and a claim for implied warranty to be brought by subsequent purchasers, and

despite the claim of the builder here that the two claims are indistinguishable as a matter of proof, we conclude that there are a number of differences between the two claims and therefore they should be treated differently. Some overlap in elements of proof of such actions may occur, but the scope of duty differs and the basis for liability is distinguishable. The implied warranty of habitability and fitness arises from the contractual relation between the builder and the purchaser. Proof of a defect due to improper construction, design, or preparation is sufficient to establish liability in the builder-vendor.[6] Negligence, however, requires that a builder or contractor be held to a standard of reasonable care in the conduct of its duties to the foreseeable users of the property. *Lembke Plumbing and Heating, supra; Wright v. Creative Corp., supra.* Negligence in tort must establish defects in workmanship, supervision, or design as a responsibility of the individual defendant. Proof of defect alone is not enough to establish the claim. Foreseeability limits the scope of the duty, and the passage of time following construction makes causation difficult to prove. Comment, *Builders' Liability for Latent Defects in Used Homes, supra,* at 611. Moreover, in the context of the purchase of a used home, the owner must demonstrate that the defect is latent or hidden, and must show that the defect was caused by the builder. *Id.* at 623; *see also Duncan v. Schuster-Graham Homes, Inc., supra.*

■ The reason for allowing recovery only for latent or hidden defects, which have been defined as "those manifesting themselves after purchase and which are not discoverable through reasonable inspection," Comment, *Builders' Liability for Latent Defects in Used Homes, supra* at 623, is to prevent an action where mere deterioration or loss of a bargain is claimed. *See Crowder v. Vandendeale, supra.* Often a buyer is willing to accept certain deficiencies in a house in exchange for a lower purchase price. However, a buyer cannot

---

**6.** An implied warranty of habitability has been likened to strict liability of the builder for construction defects. *Redarowicz v. Ohlendorf, supra; Coburn v. Lennox Homes, Inc., supra.*

be expected to discover structural defects which remain latent at the time of purchase.

 An additional limitation on the ability of a subsequent purchaser to bring a negligence action against a builder for latent defects in a residence is the statute of limitations adopted by the General Assembly in 1979.[7] Section 13–80–127, C.R.S.1973 (1982 Supp.) provides in part:

(1)(a) All actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than ten years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section.

(b) A claim for relief arises under this section at the time the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury, when such defect is of a substantial or significant nature.

(c) Such action shall include any and all actions in tort, contract, indemnity, or contribution or other actions for the recovery of damages for:

(I) Any deficiency in the design, planning, supervision, construction, or observation of construction of any improvement to real property; or

(II) Injury to real or personal property caused by any such deficiencies; or

(III) Injury to or wrongful death of a person caused by any such deficiency.

We note that the statute applies to structural damage to a residence and allows actions against a builder, whether in tort or contract, by a subsequent purchaser.

We affirm the judgment of the Court of Appeals and remand the case to the district court with instructions to reinstate the plaintiffs' complaint.

ROVIRA, J., dissents.

KIRSHBAUM, J., does not participate.

ROVIRA, Justice, dissenting:

I respectfully dissent.

The majority holds that subsequent purchasers may bring an action in negligence against a builder to recover for economic loss due to latent structural defects in the house, despite the absence of privity of contract between the subsequent purchaser and the builder. It points out that privity of contract is no longer the controlling consideration determining the viability of negligence claims. Although agreeing with this contention, I do not find it controlling here. It is true that in modern negligence theory foreseeability, and not privity, determines the scope of the duty owed by the tortfeasor. The question of the scope of the duty, however, deals with who may sue for the breach of a duty. The majority errs in failing to distinguish between the question of *to whom* the duty is owed and the question of *what* duty is owed.

In *DeCaire v. Public Service Co.*, 173 Colo. 402, 479 P.2d 964 (1971), we held that a subsequent purchaser of a house could sue Public Service Company (PSC) for personal injuries and death resulting from its negligent inspection of a furnace that took place while the house was owned by the previous owner. The trial court had set aside a jury verdict on the ground that PSC had no duty to the plaintiffs because there was no privity of contract between the plaintiffs and PSC, since the contractual relationship was between PSC and the previous owners. We stated:

"No good reason appears to limit the liability, under the circumstances here, to the parties who requested the inspection. It was foreseeable in this age of shifting

---

7. The Wellers' action was filed on September 28, 1979. The act took effect on July 1, 1979 and required all claims to be commenced on or before July 1, 1981, if not barred by section 13–80–127 as it existed prior to July 1, 1979, or by any other applicable statute of limitations.

populations that someone other than the [original purchasers] might be occupying the premises in the future. The unsafe condition remained after the [original purchasers] moved."

173 Colo. at 407–08, 479 P.2d at 966.

Recovery was allowed under a similar theory in *Wright v. Creative Corp.,* 30 Colo. App. 575, 498 P.2d 1179 (1972). In *Wright,* the plaintiffs, who were the second owners of a house, sought recovery for injuries to their child sustained when he ran into an unmarked sliding glass door. The court of appeals held that "where the completed work is reasonably certain to endanger third persons if negligently constructed, a contractor or builder ... is liable for injuries or death of third persons...." 30 Colo.App. at 580, 498 P.2d at 1181–82.

The reason that recovery was allowed in these two cases was that under general rules of negligence a person has a duty not to act so as to harm the person or property of another. Privity in these cases was not determinative, because the duty breached did not arise out of the contract. The defendants would have been liable irrespective of the existence of any contract.

The reliance of the majority on *Lembke Plumbing & Heating v. Hayutin,* 148 Colo. 334, 366 P.2d 673 (1961), and *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313 (Colo.1980), is misplaced. The principle for which they are cited—"that a negligence claim, not limited by privity of contract, may lie against a contractor"—is not disputed.[1] The question is under what circumstances such an action will lie. *Lembke* involved two acts of alleged negligence. The first was the negligent installation of plumbing that ruptured, which allowed water to saturate the clay formation beneath the house, in turn causing extensive structural damage. The second was the negligent conduct of one of Lembke's employees, who, in making repairs to the heat-

ers, stepped on a copper gauge tube and flattened it. Water subsequently leaked out and accumulated to a depth of several feet. *Metropolitan* involved the negligent servicing of a heating system, which resulted in the explosion of a boiler and extensive damage to the house and personal property contained therein. Both of these cases involved damage in excess of mere commercial disappointment.

The majority holds that extension of the above cases to this case is appropriate under the doctrine of foreseeability. What they are really holding, however, is that a new legal duty exists based upon the builder's contractual undertaking to build a house. That there is no such legal duty is apparent from a comparison of the concepts of contractual duty and tort duty. Prosser describes the difference between the two as follows:

"The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. They may be owed to all those within the range of harm, or to some considerable class of people. Contract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract."

W. Prosser, *Handbook of the Law of Torts* § 92 at 613. We recognized this distinction in *Duncan v. Schuster-Graham Homes, supra,* where we held that an action to recover for structural deficiencies was contractual in nature and thus not governed by the tort statute of limitations.[2]

---

1. In point of fact, however, there was privity of contract present in both *Lembke* and *Metropolitan.*

2. Although factually the case of *Tamblyn v. Mickey and Fox, Inc.,* 195 Colo. 354, 578 P.2d

641 (1978), upon which the majority relies, is similar to the case before us, it is not control-

A recent case decided by the Supreme Court of Illinois clearly demonstrates the error of extending the concept of negligence to the kind of situation before us. *Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 441 N.E.2d 324, 65 Ill.Dec. 411 (1982). The Illinois court denied recovery in negligence to the subsequent purchaser of an allegedly defective house, stating: "To recover in negligence there must be a showing of harm above and beyond disappointed expectations. A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." 65 Ill.Dec. at 414, 441 N.E.2d at 327. Instead, it is a contractual interest that is sought to be protected, and contract principles should govern.[3]

Similarly, in *Crowder v. Vandendeale,* 564 S.W.2d 879 (Mo.1978), the Supreme Court of Missouri held that a tort action was an inappropriate vehicle for recovery for structural defects in a house. The court stated:

"A duty to use ordinary care and skill is not imposed in the abstract. It results from a conclusion that an interest entitled to protection will be damaged if such care is not exercised. Traditionally, interests which have been deemed entitled to protection in negligence have been related to *safety* or freedom from physical harm. Thus, where personal injury is threatened, a duty in negligence has been readily found. Property interests also have generally been found to merit protection from physical harm. However, where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality.* This standard of quality must be defined by reference to that which the parties have agreed upon."

*Id.* at 882 (emphasis in original).

In addition to stating the reasons why allowing a negligence action is incorrect in principle, the court in *Crowder* also noted why such a course would be unsound as a matter of policy. First, in a tort action there would be no requirement that defects be latent, except insofar as the traditional negligence defenses of assumption of risk and contributory negligence require it. Second, where a tort duty runs directly from the builder to the subsequent purchaser, the builder would have no opportunity to disclaim or otherwise allocate the economic risk with the purchaser, because there would be no contractual relationship between them.[4]

There seems to be no sound policy reason to put such limitations on the parties' ability to allocate risk. An original purchaser may be willing to accept the tradeoff of a poorer quality house for a lower purchase price. It is a questionable policy that would allow the specter of a claim by a subsequent purchaser to prevent that choice.

Cases from other jurisdictions that have held that subsequent purchasers have a cause of action in negligence for defects in construction have used the same faulty reasoning adopted by the majority. For the most part, the duty is assumed and the question is then one of foreseeability only. *See, e.g., Coburn v. Lenox Homes, Inc.,* 173 Conn. 567, 378 A.2d 599 (1977); *Terlinde v. Neely,* 275 S.C. 395, 271 S.E.2d 768 (1980); *Brown v. Fowler,* 279 N.W.2d 907 (S.D. 1979); *Moxley v. Laramie Builders, Inc.,*

---

ling, because the question of the propriety of a negligence action was not addressed or decided. The only question was which statute of limitations applied in an action against an engineer.

**3.** The Illinois court did decide that the implied warranty of habitability extends to subsequent purchasers. The dissent pointed out, however, that implied warranty without a privity requirement *is essentially strict liability in tort* and that the court had recently held that recovery for economic loss was not available under strict tort liability.

**4.** The majority appears to believe that *Crowder* and *Redarowicz* result from the peculiar case law in their respective jurisdictions, preventing recovery for "economic loss," and states that "Colorado precedent is not so limited." The Colorado "precedents" cited are *Tamblyn* and *Lembke.* However, the former case did not address the issue, while the latter was a case involving "property damage" in its ordinarily understood sense.

600 P.2d 733 (Wyo.1979). It is clear that a subsequent purchaser is foreseeable, but foreseeability alone does not create the duty. Any number of business transactions may cause an economic loss to foreseeable persons. The right of such persons to recover in tort, however, is dependent upon something in addition to foreseeability— breach of a legal duty.

The majority here, as have other courts, emphasizes the seemingly arbitrary distinction between economic loss and loss from personal injury or property damage. Thus, in *Barnes v. Mac Brown & Co.*, 264 Ind. 227, 342 N.E.2d 619 (1976), the Supreme Court of Indiana stated:

> "The contention that a distinction should be drawn between mere 'economic loss' and personal injury is without merit. Why there should be a difference between an economic loss resulting from [defects in] property and an economic loss resulting from personal injury has not been revealed to us. When one is personally injured from a defect, he recovers mainly for his economic loss. Similarly, if a wife loses a husband because of injury resulting from a defect in construction, the measure of damages is totally economic loss. We fail to see any rational reason for such a distinction."

342 N.E.2d at 621. Although having a superficial appeal, the Indiana court's reasoning is flawed, because it confuses the measure of damages with duty. The reason for allowing tort recovery for personal injuries, but not allowing recovery for economic loss, is that in the former case a tort duty—a duty imposed by law—has been violated, while in the latter case it has not.

A contractual duty arises out of the agreement between the builder-vendor and the first purchaser. We have held that implied in that contract is a warranty of habitability. *Capenter v. Donohoe, supra.* Does the builder-vendor have any duties outside the contract? It is clear that he has a duty not to build the house in such a way as to cause injury to the person or property

of others. *Wright v. Creative Corp., supra.* This duty arises by law and not out of the contract. The existence of a contract is irrelevant to the existence of this duty, which would be owed equally by a builder who built for himself and used the house as his own residence. Does a builder have a duty to ensure that his own house is habitable? I think not, at least not beyond that specified in the building codes. The reason he has no duty to build the house in a workmanlike manner is that there is no contract requiring him to do so. If he later sells the house, he may be liable to the purchaser, *see Sloat v. Matheny, supra,* but, if so, it is because he breached an implied warranty at the time of sale, not because he breached a duty to the purchaser when he was building the house.

That the duty to build so as not to harm another has a source different from the duty to build in a workmanlike manner is apparent from consideration of two hypothetical situations. Suppose a builder builds a house on a hill to the specifications of the buyer and the builder reasonably should know that the house will slide down the hill into a house below. If the house does slide and the builder is liable for the sliding of the house, it is because he has a legal duty cognizable in tort not to harm the person or property of others.

Suppose, on the other hand, that the buyer tells the builder to build a house on a six-inch concrete foundation and the builder tells the buyer that the foundation must be twelve inches in order to be sound. Further, suppose that the buyer tells the builder to go ahead with the six-inch foundation and the house ultimately suffers severe structural damage because of the inadequate foundation. One would think the builder not liable to the buyer on one of two theories.[5] Either he was not negligent, *i.e.,* he breached no legal duty, or he was negligent but may avail himself of the affirmative defenses of contributory negligence and assumption of risk. If the latter theory is adopted, the builder may be in an awk-

---

5. Yet, the majority holds that "[a]n obligation to act without negligence in the construction of a home is independent of contractual obligations . . . ."

ward position with respect to subsequent purchasers. If the builder has actually breached a legal, as opposed to contractual, duty to all foreseeable purchasers—that is, both first and subsequent purchasers—the fact that he built to the specifications of the first purchaser may not be relevant to the question of liability to subsequent purchasers, because the contributory negligence of the first purchaser may not be imputed to subsequent purchasers.

The principle expressed by the majority is a very broad one. It is that the breach of a duty arising solely out of a contract is also a breach of a tort duty, that is, that commercial expectations are protected by tort law. This is not the same as the principle that the breach of a duty arising as a matter of fact from a contractual relationship may be both a breach of contract and a tort. For example, a physician guilty of malpractice may also be guilty of a breach of contract. Although the same conduct may give rise to both claims for relief, the duties are separate. Even in the absence of a contract, careless treatment may give rise to a negligence action. Conversely, even in the absence of negligence, the doctor's treatment may give rise to a breach of contract action, as where the doctor expressly warrants the results of a given treatment. Thus, one cause of action may exist in the absence of the other.

The same is true in the case of a homebuilder. A builder may expressly or implicitly warrant the quality of the house. Failure to perform to standards may give rise to an action sounding in contract or warranty; negligence is not required. On the other hand, a builder may negligently build a house that explodes, causing personal injury to others; regardless of the terms of the contract or the existence of disclaimers of warranty, the builder is liable for injury. This is so whether the person injured bought the house from the builder, or whether the house had not yet been sold, or whether the builder was living in the house himself.

There is no logical limit to the principle adopted by the majority. If the duty to be obeyed is defined by the contract, it would seem to follow that every breach of contract is cognizable in tort. *But see Metropolitan Gas Repair Service, Inc. v. Kulik, supra,* ("The contractual obligation is not the touchstone of civil liability in tort."). There is no principled way for this court—or any court—to limit the reasoning to the case of homebuilders; it can do so only by judicial fiat. While such line-drawing is appropriate for a legislative body—indeed that is its primary function—it is singularly inappropriate for a judicial body.

The effect of the majority opinion is to blur the distinction between tort and contract. The duties imposed by the two doctrines are different and arise out of different policy considerations. They should be kept conceptually distinct.

The majority limits its holding to latent defects, which it defines as "those manifesting themselves after purchase and which are not discoverable through reasonable inspection." At 1045 (quoting Note, *Builders' Liability for Latent Defects in Used Homes,* 32 Stan.L.Rev. 607 (1980)). It does not reveal the principle of negligence law from which it divines this limitation. Any limitation to latent defects or to houses can be made only by the sheerest form of *ipse dixit.*

Combined with its equation of personal injury and economic loss, at 1044 n. 5, the majority's limitation of recovery to defects not reasonably discoverable leads inexorably to the conclusion that a claim for personal injuries resulting from the negligent construction of a house is barred if the defects could have been discovered through a reasonable inspection. This conclusion may be avoided only through enunciation of the "principle" that personal injury and economic loss are to be treated the same if a plaintiff is thereby allowed to recover for economic loss, but they are to be treated differently if necessary to allow a plaintiff to recover for personal injuries. Such a rule goes far toward creating remedies for plaintiffs, but does little to ensure that the same principles of law apply to everyone.

We would do well to consider the reflections of Benjamin Cardozo in a chapter aptly entitled "The Method of Sociology. The Judge as a Legislator":

"Our jurisprudence has held fast to Kant's categorical imperative, 'Act on a maxim which thou canst will to be law universal.' It has refused to sacrifice the larger and more inclusive good to the narrower and smaller. A contract is made. Performance is burdensome and perhaps oppressive. If we were to consider only the individual instance, we might be ready to release the promisor. We look beyond the particular to the universal, and shape our judgment in obedience to the fundamental interest of society that contracts shall be fulfilled. There is a wide gap between the use of the individual sentiment of justice as a substitute for law, and its use as one of the tests and touchstones in construing or extending law.... The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to 'the primordial necessity of order in the social life.' Wide enough in all conscience is the field of discretion that remains."

B. Cardozo, *The Nature of the Judicial Process* 139–41 (1921). We ought not distort the principles of tort law merely to generate desired results.

I have no quarrel with the sentiments that lead the majority to its conclusions. There may be sound public policy reasons for a rule holding builders liable to subsequent purchasers. We must not, however, be carried into areas beyond our institutional competence by the talisman of "public policy." There are two questions that should be answered before making any decision. First, who should make the decision? Second, what is the best decision? We should not jump over the first question in our haste to answer the second.

Much more than in the question of whether there should be an implied warranty running from builder-vendor to first purchaser, the question of tort liability to subsequent purchasers presents a host of competing considerations that are better left to the legislative process. The legislature has the resources and the appropriate mechanisms to ascertain the public will, to investigate the alternatives available, to consider the disparate views of the community that would be affected, and to balance the impact of imposition of such liability. It may create such liability; there is no compelling reason for us to do so. *See, e.g.,* Uniform Land Transactions Act §§ 2–311, 2–312, 13 U.L.A. 131–35 (1980 Pamphlet) (exclusion, modification, and assignments of warranties).

I would hold that a subsequent purchaser of a house does not have a claim for relief in negligence against a builder for structural defects, and I would reverse the judgment of the court of appeals.