Jack J. GRYNBERG; Celeste C. Grynberg; Rachel S. Grynberg; Stephen M. Grynberg; and Miriam Z. Grynberg, Petitioners,

v.

AGRI TECH, INC., a Colorado corporation; Morgan County Feeders, Inc., a Colorado corporation; A T Cattle Co. Ltd., a Colorado limited partnership; Gary A. Weisbart; Simon Chilewich; and Chilewich Sons & Co., a New York partnership, Respondents.

No. 99SC399.

Supreme Court of Colorado, En Banc.

Sept. 18, 2000.

---

Reiman & Bayaz, P.C., Jeff Reiman, Marcie Bayaz, Debra Asimus, Denver, Colorado, Attorneys for Petitioners.

Cage & North, P.C., Jack Berryhill, Rita J. Bonessa, Denver, Colorado, Attorneys for Respondents.

Walter H. Sargent, A Professional Corporation, Walter H. Sargent, Colorado Springs, Colorado, Attorney for Amicus Curiae Colorado Trial Lawyers Association.

Isaacson, Rosenbaum, Woods & Levy, P.C., Frederick B. Skillern, Denver, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Justice RICE delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' judgment in *Grynberg v. Agri Tech, Inc.*, 985 P.2d 59 (Colo.App.1999). Petitioners (collectively "Grynbergs") filed suit against Respondents, asserting a number of contract and tort claims arising out of a cattle investment program. The Grynbergs alleged that the investment program was designed and run improperly, causing them to receive less than a specified rate of return on their investment. After a trial, the jury found in favor of the Grynbergs on a breach of fiduciary duty claim and also on a negligence claim. Although they awarded no damages on the breach of fiduciary duty claim, the jury awarded $600,000 on the negligence claim. The court of appeals reversed the judgment on the negligence claim, holding that the economic loss rule barred the assertion of the claim. Upon review, we affirm the judgment of the court of appeals.

## I. FACTS AND PROCEDURAL HISTORY

In 1985, the Grynbergs invested in a cattle program administered by Respondents. Respondent Agri Tech, Inc. ("Agri Tech") was in the business of feeding cattle owned by its customers. Respondent A T Cattle Company, was an affiliate of Agri Tech, which was in the business of importing cattle from Mexico for Agri Tech and its customers. Respondent Morgan County Feeders was also an affiliate of Agri Tech, whose business was to lend money to Agri Tech's customers to cover the cost of purchasing, caring for, and feeding the cattle (Agri Tech did not require its customers to use the services of Morgan County Feeders).

Beginning in 1985, and continuing for five years, the Grynbergs invested approximately $95 million in 135,000 cattle using the services of Agri Tech and its affiliates. At the beginning of the relationship, the parties were operating without a written contract.[1] In 1987, the parties reduced their relationship to writing. The Grynbergs each signed custom feeding agreements with Agri Tech which provided that Agri Tech would "accept and care for cattle belonging to [the Grynbergs] in accordance with the customary standards of care, responsibility, and good animal husbandry." (Custom Feeding Agreement ¶ 4.)

Over the course of the five year period, the Grynbergs became displeased with their investment returns. The Grynbergs ultimately sued Respondents, asserting both contract

---

1. Testimony indicated that it was common in the industry to transact business without a written contract.

and tort claims. At trial, five claims were submitted to the jury: breach of fiduciary duty, fraud, conspiracy, breach of contract, and negligence. The jury found in favor of the Grynbergs on their negligence claim and their breach of fiduciary duty claim. However, the jury awarded damages for the negligence claim only. The damage award of $600,000 was subsequently reduced by the trial court to $360,000 to account for the jury's finding of the Grynbergs' comparative negligence. The jury found in favor of Respondents on all other claims.

Respondents appealed the judgment and the court of appeals reversed the judgment on the negligence claim, finding that the economic loss rule barred the assertion of this claim. The court concluded that Respondents breached no duty independent of their contractual obligations and, thus, the Grynbergs' claim for negligence could not stand.

We granted the Grynbergs' petition for writ of certiorari to review the judgment of the court of appeals.[2]

## II. ANALYSIS

The Grynbergs contend that the court of appeals erred in applying the economic loss rule to bar their negligence claim. This case, along with *Town of Alma v. AZCO Construction, Inc.*, 10 P.3d 1256 (Colo. 2000), presents an opportunity for us to address the status of the economic loss rule in Colorado. With our judgment today in *Town of Alma* and in the instant case, we now expressly adopt the economic loss rule in Colorado. For the reasons stated below, we conclude that it is appropriate to apply the rule in this case to bar the Grynbergs' negligence claim.

### A. Economic Loss Rule

As we discussed in *Town of Alma, id.* at 1259, the economic loss rule emerged largely from the development of products liability jurisprudence. Although its initial development was in direct response to the emer-

gence of strict liability in tort theories, its application is now much broader as it serves today to maintain the boundary between contract law and tort law. *See id.*

■ The proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached. Thus, our formulation of the economic loss rule is that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.

The Grynbergs rely on several of our cases for the argument that our precedent dictates that they should be allowed to proceed on both negligence and contract theories. We engaged in a discussion of three of these cases, *Lembke Plumbing and Heating v. Hayutin,* 148 Colo. 334, 366 P.2d 673 (1961), *Metropolitan Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313 (Colo.1980), and *Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (Colo.1983), in *Town of Alma,* 10 P.3d at 1265–1266. As we discussed in *Town of Alma,* our holding in each of these cases followed from our determination that the defendants breached a duty of care *independent* of any contractual obligations to the plaintiffs.

Our holdings in these cases do not support the Grynbergs' contention that they should be permitted to maintain their negligence claim. Unlike these cases, the Grynbergs have not shown that any duty independent of the oral and written contracts was breached. As the court of appeals noted, the Grynbergs are seeking the same relief in both their contract and negligence claims: damages for the alleged failure of Respondents to properly manage the cattle investment program. The duties allegedly breached by Respondents were created by the contracts. The contracts between the parties imposed a duty of care on Respondents to care for the cattle according to the customary standards of the industry. The feeding agreement between the parties specifically requires Agri Tech to

**2.** We granted certiorari on the following issue: Whether the court of appeals erred in holding that Petitioners' negligence claim against Re-

spondents could not be maintained because it was based solely on the breach of a contractual duty and involved purely economic damage.

care for the Grynbergs' cattle "in accordance with the customary standards of care, responsibility, and good animal husbandry." (Custom Feeding Agreement ¶ 4). The duty of care is created by, and completely contained in, the contractual provisions.

Therefore, absent the duties imposed by the contractual relationship between the parties, there is no independent duty of care owed to the Grynbergs by Respondents. The Grynbergs assert that they are relying on Agri Tech's common law duty to design and implement the Grynbergs' investment program with the relevant standard of care. However, they cite no support for the existence of this common law duty of care, nor are we aware of any cases where we have recognized such a duty in this context. Moreover, the Grynbergs fail to explain how a "common law duty" would impose a different duty of care on Respondents than that already provided for by contract. This is a classic example of a case where the plaintiffs are seeking to recover damages for the loss of their bargain with defendants these are pure economic loss damages based on disappointed expectations. An action to recover damages for the loss of a bargain is the exclusive province of contract law. *See Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 239 (6th Cir.1994) ("The essence of contract law is the bargain: parties of equivalent bargaining power negotiate the terms of the transaction and each is then entitled to the benefit of the bargain.").

The Grynbergs also rely on our decision in *Cooley v. Big Horn Harvestore Systems, Inc.*, 813 P.2d 736 (Colo.1991). In *Cooley*, the plaintiffs were dairy farmers who contracted with Big Horn Harvestore Systems ("Big Horn") to purchase a Harvestore automated grain storage and distribution system for use in their dairy operation. *See id.* at 738. After the Cooleys began to feed their herd with grain stored in the Harvestore system, the health of the herd began to deteriorate. *See id.* at 739. Big Horn subsequently undertook to provide the Cooleys with advice and recommendations on various nutritional programs. *See id.* The health of the herd continued to deteriorate and the Cooleys sued the defendants, asserting both

contract and negligence claims. *See id.* After the Cooleys prevailed on both the contract and negligence claims at trial, Big Horn argued on appeal that the contract provided the exclusive remedy, relying on a contractual provision stating that the express warranty provided in the contract was the exclusive remedy and that the buyer waived all other remedies. *See id.* at 748. We rejected Big Horn's argument by observing that the exclusive remedy provision applied only to duties that were created by the contract. *See id.* at 749. We noted that the contract for the purchase of the Harvestore system only required Big Horn to "install a foundation and erect the superstructure" and that the Cooleys' negligence claim was based on "an alleged breach of a *separate* duty of care arising from Big Horn's conduct in providing advice and recommendations concerning adoption, modification or rejection of nutritional programs." *Id.* (emphasis added). We expressly found that "Big Horn's responsibilities with regard to the communication of information concerning nutritional programs *were not governed by the purchase agreement.*" *Id.* (emphasis added).

Unlike the facts in *Cooley*, all of the actions undertaken by Respondents in the instant case were called for in, and governed by, the contracts between the parties. Respondents did not provide any services to the Grynbergs that they were not already required to provide by the terms of the contracts. As discussed above, the contracts in this case imposed a duty on Respondents to administer a cattle program by purchasing, caring for, and selling cattle. The contracts explicitly required Respondents to care for the cattle according to the customary standards of the cattle industry. Because Respondents undertook to provide no services outside the scope of their contractual duties, we disagree with the Grynbergs' contention that our decision in *Cooley* lends support to their argument that they should be permitted to maintain their negligence claim.

We also disagree with the Grynbergs' argument that our decision in *Webb v. Dessert Seed Co.*, 718 P.2d 1057 (Colo.1986), lends support to their negligence claim. In *Webb* we allowed negligence claims to proceed

against an onion seed seller when the onions failed to bulb properly, causing them to be unsuitable for sale. *See id.* at 1059–60. The plaintiffs had no contractual relationship with the defendant; they had purchased the plants from George Webb, who had grown the seeds into small plants after purchasing the seeds from the defendant. *See id.* We allowed the negligence claims because we determined, based on case law from other jurisdictions, that seed distributors owed a general duty of care to avoid foreseeable harm to users. *See id.* at 1062. In *Webb*, we were not concerned with a potential overlap between contract and tort duties the negligence claims were based on the seed distributor's recognized duty of care. As such, we conclude that our decision in *Webb* is inapplicable to the instant case and lends no support to the Grynbergs' argument.

The Grynbergs also rely on a series of cases in which we have allowed a tort action for purely economic loss in certain special circumstances. We find these cases inapplicable to the resolution of the issue before us, because in each of these cases we recognized that the nature of the special relationship between the parties created an independent duty of care that supported a tort action even though the parties had entered into a contractual relationship. *See Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 83 (Colo.1999)(attorney-client relationship creates independent duty of care); *Greenberg v. Perkins,* 845 P.2d 530, 534 (Colo.1993)(physician-patient relationship creates independent duty of care, as does physician's independent medical examination of non-patient); *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138, 1141–42 (Colo.1984)(quasi-fiduciary nature of insurer-insured relationship creates indepen-

dent duty of care).[3] Because these cases involve special relationships that we have determined automatically trigger independent duties of care, they are inapplicable to the instant case as no equivalent special relationship existed between the parties.[4]

### III. CONCLUSION

In sum, we hold that the economic loss rule bars the Grynbergs' negligence claim in this case because the Grynbergs have alleged the breach of contractual duties only resulting in purely economic loss. As such, we affirm the judgment of the court of appeals.

Justice KOURLIS does not participate.

---

3. In these cases recognizing special relationships, we have been careful to maintain the independent duty distinction between contract and tort actions. *See, e.g., Greenberg,* 845 P.2d at 533 ("A negligence action will fail therefore if it is based on circumstances for which the law imposes no duty of care upon the defendant for the plaintiff's benefit.").

4. We also are not persuaded by the Grynbergs' reliance on *Bayly, Martin & Fay v. Pete's Satire,* 739 P.2d 239 (Colo.1987), and *Kellogg v. Pizza Oven, Inc.,* 157 Colo. 295, 402 P.2d 633. In both cases we recognized that an undisputed indepen-

dent duty of care supported the negligence action. *See Bayly, Martin & Fay,* 739 P.2d at 243 ("There is no question that an insurance broker or agent who agrees to obtain a particular form of insurance coverage ... has a legal duty to obtain such coverage or to notify the person of his failure or inability to do so."); *Kellogg,* 402 P.2d at 634 (Colo.1965)("It was not disputed that by custom when it is discovered that a building is exceeding the cost limitations it is incumbent upon the architect to tell this fact to the one who is employing him.").