**A GOOD TIME RENTAL, LLC, a California limited liability company; Noble Petroleum, LLC, a California limited liability company; and Arugula Investment, LLC, a California limited liability company, Plaintiffs–Appellants,**

v.

**FIRST AMERICAN TITLE AGENCY, INC., d/b/a First American Heritage Title Company, Inc., a Colorado corporation, Defendant–Appellee.**

No. 10CA0362.

Colorado Court of Appeals, Div. A.

June 9, 2011.

Thomas E. Napp, P.C., Thomas E. Napp, Golden, Colorado; Bennington, Johnson, Biermann & Craigmile, LLC, Kenneth R. Bennington, Tami L. Sapp, Denver, Colorado, for Plaintiffs–Appellants.

Moye White LLP, William F. Jones, Dean E. Richardson, Denver, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

In this action involving a failed commercial real estate transaction, plaintiffs, A Good Time Rental, LLC, Noble Petroleum, LLC, and Arugula Investment, LLC, appeal from the summary judgment barring under the economic loss rule plaintiffs' negligence and negligent misrepresentation claims against the closing agent, defendant, First American Title Agency, Inc., doing business as First American Heritage Title Company, Inc. (American Heritage). We affirm.

## I. Background

### A. Undisputed Facts

A Good Time Rental and Noble Petroleum owned a fee simple interest and a leasehold interest, respectively, in two adjacent parcels of real estate located in Douglas County, Colorado. Restaurant Operating Company, LLC (ROC) proposed to exchange two properties located in California for the Colorado properties, pursuant to section 1031(a)(1) of the Internal Revenue Code. *See* 26 U.S.C. § 1031(a) (providing for exemption from taxes on gains realized by the exchange of "like-kind" property).

Good Time, Noble, and ROC retained Investment Exchange Group, LLC (IXG) to facilitate the exchange. Although Good Time and Noble agreed to assume ROC's mortgages on the California properties, they needed time to obtain financing. Therefore, IXG created Arugula Investment, LLC, to which ROC transferred title to the California properties, giving Good Time and Noble an option to purchase them when they could raise the funds.

In the meantime, Good Time and Noble proceeded to transfer the Colorado properties to ROC, retaining American Heritage as a title insurer and to provide closing and settlement services. Good Time, Noble, and ROC had agreed to finance the sale as a "seller carryback," with ROC taking title to the properties but executing a promissory note in the amount of $300,000, payable to Good Time and Noble. The note would have been cancelled upon Good Time and Noble's purchase of the California properties.

Good Time and Noble prepared a contract, titled "closing instructions," which bound them, ROC, and American Heritage to carry out the transaction as agreed upon. However, plaintiffs claim, American Heritage never delivered to Good Time and Noble an original promissory note signed by ROC. And, due to alleged fraud on ROC's part, they were unable to obtain financing to assume the mortgages on the California properties. Thus, the exchange was not completed, and Good Time and Noble allegedly received no consideration for the Colorado properties.

Following the commencement of this action, IXG transferred its interest in Arugula to Mark Cohen and Tom Touhy (respectively, the owners of Good Time and Noble), and Arugula was added as a plaintiff.

### B. Trial Court Proceedings

As relevant here, plaintiffs filed suit against American Heritage, alleging that it

had negligently breached the duty to "exercise reasonable care and competence" in conducting the closing; and had negligently misrepresented that all documents necessary to the closing on the Colorado properties had been received and reviewed, and that it was thus "ready, willing and able to close escrow."

American Heritage moved for summary judgment, arguing that, pursuant to the economic loss rule, plaintiffs' sole recovery against it was in contract, not tort, because the parties' contract—the closing instructions—contained the duties allegedly breached. Plaintiffs did not dispute that the contract contained the pertinent duties, but argued that American Heritage also had breached duties of care sounding in tort and, therefore, the economic loss rule did not apply to their action.

The trial court agreed with American Heritage, and granted summary judgment on both plaintiffs' negligence and negligent misrepresentation claims. Plaintiffs appeal, contending that the court erred in determining that the economic loss rule barred those claims. We disagree.

## II. Standard of Review

We review a trial court's order granting summary judgment de novo. *E.g., Westerman v. Rogers,* 1 P.3d 228, 230 (Colo.App. 1999). "Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Peterson v. Halsted,* 829 P.2d 373, 375 (Colo.1992); *see* C.R.C.P. 56(c).

The parties do not dispute any fact material to the issues raised on summary judgment. Thus, we need determine only whether the court's grant of summary judgment was correct as a matter of law.

## III. Overview: Economic Loss Rule in Colorado

■ "A party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1264 (Colo.2000).

■ The rule is applied to determine whether tort law or contract law provides the remedy for a plaintiff's loss. When sophisticated parties have bargained for the allocation of risks and remedies for nonperformance, it prevents unanticipated tort liability from undermining their reliance on their bargain. *E.g., id.* at 1262; *see also Grynberg v. Agri Tech, Inc.,* 985 P.2d 59, 62 (Colo.App. 1999) (*Grynberg I* ) (where a party seeks damages in tort based on the breach of a duty that arises under a contract, "[t]o permit both [contract and tort] claims to stand would ... render ineffective the parties' attempts, through contract, to determine for themselves their respective duties and obligations in a relationship"), *aff'd,* 10 P.3d 1267 (Colo.2000) (*Grynberg II* ).

■ To decide whether the economic loss rule applies to a particular dispute, courts look to the source of the duty allegedly breached, asking whether it was created by, or exists independently of, the contract. *E.g., Town of Alma,* 10 P.3d at 1263 ("where [a court has] recognized the existence of a duty *independent* of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim") (emphasis in original); *Grynberg II,* 10 P.3d at 1269.

■ However, even a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract. *See BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 74 (Colo.2004); *Stewart Software Co. v. Kopcho,* —— P.3d ——, ——, 2010 WL 3432214 (Colo.App.2010) (*cert. granted* Mar. 28, 2011). This is because, courts assume, sophisticated parties can build the anticipated cost of a breach of their respective duties into their bargain.

■ As with any rule, there are exceptions. Thus, even when a contract contains the duty allegedly breached, the economic loss rule is not applicable if there is law or policy providing that tort liability cannot or should not be allocated through contract. *See, e.g., Town of Alma,* 10 P.3d at 1263. *Compare Brody v. Bock,* 897 P.2d 769, 776

(Colo.1995) (fraud claim asserts duty, independent of contract, to refrain from misrepresenting intent to fulfill a promise), *with Hamon Contractors, Inc. v. Carter & Burgess, Inc.,* 229 P.3d 282, 289 (Colo.App.2009) (fraud claim not barred by economic loss rule if it involves a matter extrinsic to the parties' contract, but barred when it arises from duties implicated by a party's performance of contractual terms).

■ Thus, to determine if a claim is barred under the economic loss rule, a court must determine whether a duty alleged is independently recognized; if so, whether performance of the parties' contract implicates that same duty; and, if it does, whether there are policy reasons to allow tort remedies notwithstanding the contract.

## IV. Negligence

■ Applying that analysis here, we agree with the trial court that the economic loss rule bars plaintiffs' negligence claim.

A. The duty to exercise reasonable care is independently recognized under tort law.

Plaintiffs' complaint alleged that American Heritage breached its duty "to exercise reasonable care and competence" in conducting the closing "in an appropriate manner such that foreseeable damages would be prevented." These foreseeable damages comprised the failure of plaintiffs' anticipated consideration: a $300,000 promissory note. The complaint did not include a claim for breach of fiduciary duty. Thus, we read plaintiffs' complaint to allege that American Heritage breached (1) the duty to deliver a signed, original promissory note to plaintiffs and (2) the duty as a closing agent to prepare documents and disburse net proceeds with reasonable care and competence. We agree that the latter duty is independently recognized at common law.

American Heritage necessarily had no duty to deliver a promissory note to plaintiffs but for the closing instructions, which expressly required it to, inter alia, prepare, deliver, and record those documents necessary to carry out plaintiffs' and ROC's agreement to finance the sale though a "seller carryback" transaction with a note obligating ROC.

However, American Heritage's agreement to deliver the note activated "a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done." *Lembke Plumbing & Heating v. Hayutin,* 148 Colo. 334, 341, 366 P.2d 673, 677 (1961) (quoting 38 Am.Jur. § 20, at 662). Thus, American Heritage was obligated to exercise reasonable care, skill, and faithfulness in transferring the property subject to the closing as instructed, specifically, to deliver the note as required.

B. Performance of the parties' contract implicates the duty to exercise reasonable care.

### 1.

■ As an initial matter, we conclude that plaintiffs may not defend against application of the economic loss rule on the assertion that there was no valid contract between the parties. In the trial court, the single issue raised on summary judgment was whether the economic loss rule barred plaintiffs' tort claims. The record shows that American Heritage's argument (necessarily) was premised on the existence of the closing instructions as a contract between the parties. Although plaintiffs urge otherwise here, neither their response nor any other pleading or argument properly raised or challenged that premise. Indeed, the trial court's ruling rested on the absence of disagreement that there was a valid contract between the parties, namely, the closing instructions prepared by plaintiffs. Thus, plaintiffs' challenge here to the existence of a contract was not preserved for appeal. *See, e.g., American Family Mutual Ins. Co. v. Allen,* 102 P.3d 333, 340 n. 10 (Colo.2004) (*Allen* ).

### 2.

Turning to the merits of the issue, we conclude that the duty to act with reasonable care arising from American Heritage's undertaking to provide closing services was not independent of the parties' contract.

As discussed, the "foreseeable damages" that American Heritage allegedly failed to avoid through the exercise of reasonable care amounted to plaintiffs' loss of the benefit they expected under the contract: a promissory note as consideration for their real property. Thus, the tort duty allegedly breached here imposed the same duty of care as the parties' contract: to act as necessary to obtain the note from ROC and deliver it to plaintiffs, thus avoiding the very loss about which they complain. This duty, therefore, was implicit in their contract. *See Grynberg II,* 10 P.3d at 1270 (duty is not independent of pertinent contract where claimant "fail[s] to explain how a 'common law duty' would impose a different duty of care ... than that already provided for by contract").

Although in Colorado, recovery in tort has been allowed for breach of the duty to use reasonable care during performance of a contract resulting in physical injury to persons or property, *e.g., Lembke,* 148 Colo. at 341, 366 P.2d at 677 (faulty plumbing work resulted in saturation of and cracks in home's foundation), we decline plaintiffs' invitation to extend that rationale here, where the damage they complain of is precisely the loss of the economic benefit American Heritage was required, by contract, to confer. *Compare Union Ins. Co. v. Hottenstein,* 83 P.3d 1196, 1201 (Colo.App.2003) (duty recognized in *Lembke* does not support tort claim to recover money lost as a result of contractor's substandard home renovations; plaintiff cannot "recharacterize her contract damages as negligence damages"), *with Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041, 1043–44 (Colo.1983) (tort liability arising out of contractual performance based on "apparent risk ... [of] one who foreseeably suffers *personal* injury as a consequence of builder or contractor negligence") (emphasis supplied).

Two federal district courts, interpreting Colorado law, have come to the same conclusion. *See Ins. Co. of North America v. Aspen Alps Condominium Ass'n,* 915 F.Supp. 1122, 1126 (D.Colo.1996) (rejecting argument that *Lembke* permits party suffering damage as a result of substandard services to sue in either tort or contract because duty to per-

form work subject to contract with reasonable care is akin to implied warranty of fitness with respect to services, arising solely from the contract); *Covert v. Allen Group, Inc.,* 597 F.Supp. 1268, 1269–70 (D.Colo.1984) (in promissory estoppel action, where plaintiff does not allege breach of any duty other than that created by alleged promise, "complaint does not sufficiently allege commission of any wrong for which tort law provides redress").

So have several other courts, which have expressly held that, to the extent the damage suffered is only to contractual expectations, the common law duty to perform a contract with reasonable care and skill is not independent of the contract, and cannot support a tort claim. *See Sekerak v. National City Bank,* 342 F.Supp.2d 701 (N.D.Ohio 2004); *Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982); *Queensbury Union Free Sch. Dist. v. Jim Walter Corp.,* 94 A.D.2d 834, 834, 463 N.Y.S.2d 114, 115 (1983); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986).

■ We join these other courts, and hold that when, as here, the harm allegedly suffered is only to contractual expectations, the duty to perform a contract with reasonable care is not independent of the contract and therefore, a tort claim based on that duty is barred by the economic loss rule.

C. No policy reason prevents American Heritage's contractual duties from subsuming the duty to exercise reasonable care.

As noted above, plaintiffs' complaint alleged no claim of breach of fiduciary duty. As we understand their argument, however, they contend that there is a fiduciary relationship between a closing agent and its client, and, on that premise, that their relationship with American Heritage creates an exception to the application of the economic loss rule. We disagree.

In *White v. Brock,* 41 Colo.App. 156, 161, 584 P.2d 1224, 1228 (1978), a division of this court held, under the circumstances there, that a closing agent acting on behalf of an unsophisticated seller had a fiduciary duty to

protect adequately the seller's rights. But Colorado courts have been silent on this question since *White,* and have not addressed whether its holding should be applied to commercial parties, such as here.

We are aware that there is authority recognizing, even in commercial settings, a fiduciary-type relationship between a closing agent and the client. *See, e.g.,* 2 Joyce Palomar, *Title Insurance Law* § 20:3 (2010) ("[A] closing agent is considered to be the agent of all parties to the real estate transaction and, in most jurisdictions, bears a fiduciary relationship to each party."). However, even if we assume that American Heritage acted here in a fiduciary capacity, we disagree that a fiduciary duty between contracting parties necessarily creates a special relationship which effectively trumps the economic loss rule.

■ As set forth in the context of the economic loss rule, a "special relationship[ ] by [its] nature, automatically trigger[s] an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship." *Town of Alma,* 10 P.3d at 1263. The special relationships recognized in Colorado, and they are few, share the same characteristic: each implicates a risk of damages to interests that contract law is not well suited to protect.

Those interests include (1) freedom from physical harm to persons, *see Greenberg v. Perkins,* 845 P.2d 530, 536 (Colo.1993) (physician's duty to exercise professional skill to avoid causing physical harm applies to both patients and non-patient examinees), or to property, *Metropolitan Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313, 316–18 (Colo. 1980) (in repairing boiler, repair person has duty to inspect safety-release valve to prevent explosion); (2) the sense of security enjoyed under an insurance contract, *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138, 1141 (Colo.1984) (insurance agreement obligates insurer to protect insured's expectation of financial security); and (3) the entitlement to justice within our legal system, *see Town of Alma,* 10 P.3d at 1263; Colo. RPC Preamble and Scope §§ 1, 6 (attorneys, as officers of the court, "hav[e] special responsibility for the quality of justice" pertaining to business

and personal conduct, as well as particular client agreements).

■ Thus, although these judicially created special relationships may, and often do, entail a fiduciary relationship, not every fiduciary relationship implicates a risk of damages for which contract law cannot provide a remedy. Here, any fiduciary relationship arose from a contract between commercial parties, the object of which was a purely economic benefit. Consequently, and contrary to plaintiffs' argument, we conclude that, even if American Heritage had a fiduciary relationship with plaintiffs, its contractual duty to provide closing and settlement services cannot serve as the basis of any tort claim seeking additional compensation for its alleged failure to perform that same contractual obligation.

We note that federal district courts, applying Colorado law, have reached a similar conclusion. *See First Franklin Financial Corp. v. United Title Co.,* 2009 WL 3698526 (D.Colo. No. 08–CV–01866–PAB–MEH, Nov. 5, 2009) (unpublished order) (as between commercial parties, where tort action alleges nothing more than breach of contractual terms, "the economic loss rule as applied by the Colorado Supreme Court bars the tort action, regardless of what additional independent fiduciary duties closing agents may owe under different circumstances"); *Micale v. Bank One,* 382 F.Supp.2d 1207, 1221 (D.Colo. 2005) (where contract "encompasses precisely the same duties and obligations ... [p]laintiff alleges as the basis of his tort claims," any fiduciary duty between the parties "does not arise 'from an independent duty of care recognized under the common law *but not contemplated under the terms of the contract*'") (quoting *Grynberg I,* 985 P.2d at 62) (emphasis in *Micale* ). We also note that in *White,* 41 Colo.App. at 161, 584 P.2d at 1228, the claim at issue was not for breach of the duty to provide closing services, but for failure to protect the seller's interests by advising her to accept detrimental amendments to the agreement with the buyer.

## V. Negligent Misrepresentation

■ The closing took place on two separate dates, with ROC executing its documents six days before plaintiffs executed theirs. In their complaint, plaintiffs allege that American Heritage negligently misrepresented that it had obtained a signed, original promissory note from ROC, and that plaintiffs could therefore proceed with their portion of the closing. We conclude that this claim, also, was properly barred.

### A. The duty alleged is independently recognized.

■ The duty underlying the tort of negligent misrepresentation—to refrain from supplying false information to others for guidance in a transaction involving a pecuniary interest—is recognized at common law. *See Keller v. A.O. Smith Harvestore Prods., Inc.,* 819 P.2d 69, 72 (Colo.1991) (adopting Restatement (Second) of Torts § 552(1) (1977)); *Town of Alma,* 10 P.3d at 1263 (citing *Keller,* 819 P.2d at 73) (negligent misrepresentation is a tort that permits recovery for economic damage based not on the breach of any contractual obligation, but on "principles of . . . reasonable conduct").

### B. Performance of the parties' contract implicates that same duty.

However, the scope of this tort pertains to conduct that leads or induces another to enter into a transaction or agreement, not to representations directly related to performance of a contract. *Compare BRW,* 99 P.3d at 71, 75 (economic loss rule bars claim alleging defendant negligently misrepresented that it was performing contract as required), *with Keller,* 819 P.2d at 72 ("a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim"), *and First Nat'l Bank v. Collins,* 44 Colo.App. 228, 230, 616 P.2d 154, 155–56 (1980) (plaintiff who purchased business in reliance on incorrect statements regarding organization, inventory, and projected profits sufficiently stated negligent misrepresentation claim).

Here, as discussed, the closing instructions provided that American Heritage should obtain and disburse the note. Thus, as in *BRW,* if American Heritage misrepresented that it was in the process of doing so, that representation amounts only to a false statement that it was performing an obligation imposed by the closing instructions. Because the contract required that performance, plaintiffs have not alleged any duty independent of that contract and the economic loss rule applies. *See BRW,* 99 P.3d at 75; *Scott Co. v. MK–Ferguson Co.,* 832 P.2d 1000, 1005 (Colo.App.1991) (where plaintiff sued for same injuries based on, inter alia, breach of contract and negligent misrepresentation, tort claim precluded because based on conduct covered by the contract), *overruled on other grounds by Lewis v. Lewis,* 189 P.3d 1134 (Colo.2008).

### C. There are no policy reasons to create an exception.

Plaintiffs do not argue that public policy requires an exception to the economic loss rule, nor are we aware of any such requirement, in circumstances such as here, where the transaction was among experienced commercial parties and the allegedly negligent misrepresentation concerns performance of a duty contained in the parties' contract.

## VI. Motion to Amend Complaint

■ C.R.C.P. 15(a) provides that, after a responsive pleading has been filed, "a party may amend his pleading only by leave of court or by written consent of the adverse party." Leave to amend should be "freely given," C.R.C.P. 15(a), absent, inter alia, undue delay, but whether to grant it remains within the trial court's discretion. *E.g., Polk v. Denver District Court,* 849 P.2d 23, 25 (Colo.1993). Contrary to plaintiffs' contention, we see no abuse of the trial court's discretion in its refusal to allow plaintiffs to amend their complaint to add claims for breach of fiduciary duty and breach of contract.

■ Here, as noted by the trial court, plaintiffs' motion was filed a full year after their second amended complaint and only one month before the third trial setting of their claims against other parties. Plaintiffs of-

fered no explanation for this delay other than to note that a great deal of money is at stake and that the case is "factually complex." Further, in their motion, they conceded that their breach of fiduciary duty and breach of contract claims "would be based" on "the same factual matters [as their] claims for negligence and negligent misrepresentation."

Under these circumstances, the trial court's denial of the motion was well within its discretion. *See Krupp v. Breckenridge Sanitation Dist.,* 1 P.3d 178, 185 (Colo.App. 1999) (no abuse of discretion where district court denied motion to amend more than nine months after plaintiffs knew of information giving rise to claim they wished to add), *aff'd,* 19 P.3d 687 (Colo.2001).

Based on our disposition, we do not address the parties' remaining arguments. More specifically, we do not address the numerous arguments raised by plaintiffs that were unpreserved for appeal, including plaintiffs' arguments based on alleged duties imposed by the "good funds" statute, § 38–35–125, C.R.S.2010, or on alleged misrepresentations by American Heritage concerning, for example, the identity of the parties to the closing or the version of the buy-sell agreement relied on. *See, e.g., Allen,* 102 P.3d at 340 n. 10 ("Arguments not raised before the trial court may not be raised for the first time on appeal.").

The judgment is affirmed.

Judge PLANK * and Judge NIETO * concur.