**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 22, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN L. MCNEES,

    Plaintiff - Appellant,

v.

OCWEN LOAN SERVICING, LLC, a
Delaware limited liability corporation;
DEUTSCHE BANK NATIONAL TRUST
COMPANY, as trustee for Ameriquest
Mortgage Securities Inc. Asset-Backed
Passthrough Certificates, Series 2003-11,
under the pooling and servicing agreement
date[d] November 1, 2003,

    Defendants - Appellees.

No. 20-1166
(D.C. No. 1:16-CV-01055-WJM-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Following the sale of his home in foreclosure proceedings, John L. McNees

sued the beneficiary of the note and deed of trust encumbering the property, Deutsche

Bank National Trust Company ("Deutsche Bank"), and its loan servicer, Ocwen Loan

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Servicing, LLC ("Ocwen"), asserting various claims for relief stemming from Ocwen's allegedly flawed servicing of his loan. The district court dismissed some claims for failure to state a claim and granted summary judgment for defendants on the remaining claims. McNees appeals the orders dismissing his fraud claim and granting summary judgment on his breach of contract, breach of implied covenant of good faith and fair dealing, and Colorado Consumer Protection Act ("CCPA") claims.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## Factual Background

McNees purchased the home in 1980. In 2009, the beneficiary interests in the deed of trust and note were transferred to Deutsche Bank by assignment. In 2011 McNees entered into a modification agreement with the then-loan servicer, American Home Mortgage Servicing Inc., which later changed its name to Homeward Residential Inc. (Homeward). As pertinent here, the agreement deferred payment of about $4,000 in pre-modification accrued late charges and back-due interest to the new maturity date. The loan modification documents set a total monthly payment for principal, interest, and escrow for taxes and insurance, but indicated that the monthly escrow payments were subject to change.

---

[1] McNees also asserted claims for third-party breach of contract, civil conspiracy, breach of fiduciary duty, negligence, negligent misrepresentation, negligent hiring and supervision, and constructive trust. He does not challenge the district court's resolution of those claims, so we do not address those aspects of the dismissal and summary judgment orders. *See Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013); *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004).

2

In October 2011, McNees' insurance coverage for the property expired or was otherwise terminated. Homeward notified him that, pursuant to the loan documents, it had obtained temporary insurance coverage for the property and that if he did not obtain replacement coverage, it would place a one-year lender placed insurance (LPI) policy on the property at his expense. He did not obtain replacement insurance and Homeward placed the LPI policy covering the period from October 2011 through October 2012.

Meanwhile, twice in 2011 before the insurance issue arose, the escrow amount increased slightly, resulting in corresponding increases to the monthly payments. The second of those increases took effect in May 2011, and McNees made the increased payments through May 2012. In June 2012, the monthly escrow amount increased again, this time in a more significant amount to cover both the escrow shortage and the cost of the LPI policy.

McNees continued to pay the May 2011 monthly amount and the short payments caused him to fall behind on his mortgage obligations effective July 2012. In October 2012, Homeward notified him it was renewing the LPI policy for another year because he had not provided proof of his own insurance for the property. In a December 2012 letter to Homeward, McNees disputed the increased escrow amount, claiming the LPI policy premium was too high and declaring that "[a]ny outstanding balance due to insurance charges will be in suspense until this issue is resolved." Aplt. App., Vol. 2 at 160. In December 2012 and February 2013, Homeward sent McNees notices to cure, providing a deadline for paying his deficient balance. He

3

did not pay the cure amounts and continued to make short monthly payments. Consistent with the loan documents, Homeward began to hold each partial payment in a suspense account until it received sufficient funds to cover a full payment.

In February 2013, Ocwen replaced Homeward as Deutsche Bank's loan servicer. Homeward forwarded McNees' March 2013 payment to Ocwen, but Ocwen did not apply it to his account. It notified him that he was in default because he had not made the March 2013 payment and the accumulation of short payments meant he was three payments behind. McNees did not cure the deficiency and continued to refuse to pay the full monthly payment. Ocwen sent him four notices of default between June and August 2013, each reflecting a different cure figure and line item amounts that did not add up to the total deficiency shown. McNees did not make any cure payments and continued to make the same deficient monthly payments. In October 2013, Ocwen exercised its contractual right to reject his deficient monthly payment. It sent additional notices of default in 2014 and McNees again failed to make any cure payments.

Deutsche Bank initiated foreclosure proceedings in December 2014 and successfully foreclosed on the property in December 2015.

### Procedural Background

After the foreclosure, McNees filed this lawsuit. As pertinent here, he asserted claims for breach of contract and of the implied covenant of good faith and fair dealing, violation of the CCPA, and fraud. He alleged he had made all mortgage payments in full and on time and had always maintained insurance on the property,

4

and claimed the foreclosure was the result of Ocwen's flawed servicing of the loan between 2013 and 2015. Among other things, he alleged Ocwen failed to properly process and account for his monthly payments, improperly required him to pay amounts not actually owed to cure alleged deficiencies, required him to pay the fees that were deferred under the modification agreement, ordered the LIP policy as part of a kickback scheme with the insurer, failed to calculate escrow correctly, gave conflicting information in conversations and correspondence about the amount of the deficiency, and refused to correct its records when presented with documents he claimed proved its accounting errors. He also claimed Ocwen and Deutsche Bank misrepresented the balance due on the loan to prevent him from redeeming the property prior to the foreclosure sale.

The district court granted defendants' motions to dismiss the fraud claim under Fed. R. Civ. P. 12(b)(6), concluding the claim was barred under the economic loss rule. After extensive discovery, defendants filed a motion for summary judgment (MSJ) on the contract, implied covenant, and CCPA claims. The court granted the motion, concluding (1) the contract and implied covenant claims failed because the undisputed evidence established that McNees did not substantially perform under the contract, and (2) the CCPA claim failed because he did not show the requisite significant public impact. He now appeals those orders.

## Analysis

### I.     Dismissal of Fraud Claim

Because application of the economic loss rule is a question of law, claims that are barred by the economic loss rule may be dismissed under Rule 12(b)(6). *See Donner v. Nicklaus*, 778 F.3d 857, 864, 875 (10th Cir. 2015) (applying economic loss rule to uphold dismissal of negligent misrepresentation claim under Rule 12(b)(6)). We review such dismissals de novo. *Id.* at 864.

The parties agree that Colorado law applies. In Colorado, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269 (Colo. 2000). The purpose of the economic loss rule is "to maintain the boundary between contract law and tort law," *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1259 (Colo. 2000), so "[t]he proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached," *Grynberg*, 10 P.3d at 1269. *See Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008) (explaining that under Colorado law, an independent tort duty "serves as the boundary between contract and tort law, permitting only those tort claims that allege such a duty has been breached"). "To survive a motion to dismiss based on the economic loss rule, [a party] merely has to allege sufficient facts, taken in the light most favorable to him, that would amount to the violation of a tort duty that is independent of the contract." *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016).

6

Although fraud is an intentional tort, the economic loss rule may still apply, depending on the nature of the alleged fraud. *See Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 291-97 (Colo. App. 2009) (discussing various scenarios). A claim for fraud in the inducement of a contract is not barred by the economic loss rule, *see Van Rees*, 373 P.3d at 607, but "fraud relating to the performance of a contract" is generally redressable only through a breach of contract claim if it leads only to the damages one would expect from a breach, *Hamon Contractors*, 229 P.3d. at 292; *see Former TCHR, LLC v. First Hand Mgmt. LLC*, 317 P.3d 1226, 1232 (Colo. App. 2012) (recognizing that "claim[s] for fraudulent misrepresentation or concealment in connection with the performance of a contract . . . . may be barred if they arise from duties implicated by the contract and relate to the performance of that contract").

The operative Second Amended Complaint ("SAC") did not allege defendants owed McNees a tort duty independent of the contract. The alleged fraud consisted of false representations to him and governmental entities in the county where the property is located about the status of his loan and his compliance with the payment schedule. As relief, he sought rescission of the foreclosure sale. Because the source of defendants' duty to McNees was contractual, the alleged fraud related to the performance of the relevant contracts, and McNees sought damages that one would expect from a breach of those contracts, the district court held that the economic loss rule barred his claim.

McNees raises three challenges to the district court's ruling. We agree with the district court's determination and reject each of McNees' challenges.

First, McNees asserts, as he did in the district court, that the economic loss rule does not apply here because it only applies among sophisticated parties. In support, he cites *A Good Time Rental, LLC v. First American Title Agency, Inc.*, 259 P.3d 534 (Colo. App. 2011), in which a panel of the Colorado Court of Appeals said that "[w]hen sophisticated parties have bargained for the allocation of risks and remedies for nonperformance, [the economic loss rule] prevents unanticipated tort liability from undermining their reliance," *id.* at 537. As the district court noted, however, the quoted language is merely "a statement of the benefits that sophisticated parties gain through the economic loss doctrine" and does not purport to limit application of the rule to cases involving sophisticated parties. Aplt. App., Vol. 1 at 233. Moreover, the Colorado Supreme Court has not limited application of the rule to sophisticated parties and the Colorado Court of Appeals has routinely applied the rule to uphold the dismissal of tort claims brought by residential homeowners against their mortgage lender. *See, e.g.*, *Miller v. Bank of N.Y. Mellon*, 379 P.3d 342, 346, 348 (Colo. App. 2016); *see also Mayotte v. U.S. Bank Nat'l Ass'n*, 985 F.3d 1248, 1252-53 (10th Cir. 2021) (collecting cases and affirming application of the economic loss rule to dismiss residential homeowner's negligence claims against lender).

Second, McNees attempts to avoid the economic loss rule by arguing that defendants owed him a duty independent of its contractual duty. He says "[a]

8

combination of both contractual and tort duties exist in the consumer lending context and not all duties assumed by . . . loan servicers are contemplated in loan documents executed decades prior." Aplt. Opening Br. at 33. But, as noted above, the SAC did not allege defendants had an independent duty apart from their contractual duties. As alleged in the SAC, McNees' relationship with Deutsche Bank arose from the sale and assignment of his mortgage by a prior lender, and his relationship with Ocwen arose from Deutsche Bank's appointment of Ocwen as the servicer of his mortgage. Moreover, even if he had alleged a separate tort duty, "Colorado does not recognize a special relationship between lenders and borrowers," so the economic loss rule applies to tort claims between residential homeowners and their lenders. *Mayotte*, 985 F.3d at 1252.

Finally, McNees maintains the economic loss rule does not apply "where the actor commits intentional torts involving fraud or misrepresentation." Aplt. Opening Br. at 33. But the cases he cites involve fraud in the inducement, and his fraud claim was performance-based, not inducement-based—it concerned defendants' alleged failures to follow the requirements of the contractual documents that governed his loan. Accordingly, the district court correctly concluded the economic loss rule barred the claim. *See Hamon Contractors*, 229 P.3d at 292.

## II.     Summary Judgment on Contract and Implied Covenant Claims

We review the district court's grant of summary judgment de novo. *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016). In reviewing the record, we, like the district court, view facts in the light most favorable to McNees and draw

all reasonable inferences in his favor. *Id.* "Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

Under Colorado law, a plaintiff suing for breach of contract or breach of the implied covenant of good faith and fair dealing must prove he substantially performed his own obligations under the contract at issue or that his performance was excused. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992); *McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 967 (Colo. App. 2015) (explaining that the duty of good faith and fair dealing requires that "the parties perform in good faith the obligations imposed by their agreement" and that violation of the duty "gives rise to a claim for breach of contract" (internal quotation marks omitted)). To meet the substantial performance requirement, the plaintiff must show he made an "attempt in good faith to strictly and fully perform." *Reynolds v. Armstead*, 443 P.2d 990, 991 (Colo. 1968) (internal quotation marks omitted). The requirement "is not satisfied unless there has been only slight or inadvertent omissions or departures," *id.* (internal quotation marks omitted), and the defendant "has received substantially the benefit he expected," *W. Distrib. Co*, 841 P.2d at 1058 (internal quotation marks omitted). "A party may establish justification for nonperformance under a contract if it demonstrates that the other party to the contract caused its nonperformance."

10

*Hemmann Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 859 (Colo. App. 2007). Whether a party has substantially performed under a contract is generally a question of fact unless the facts are undisputed and only one inference can reasonably be drawn. *Little Thompson Water Ass'n v. Strawn*, 466 P.2d 915, 917 (Colo. 1970).

McNees' contract and implied covenant claims alleged defendants' breaches began with Ocwen's mishandling of his March 2013 payment during the transition from Homeward to Ocwen and continued with Ocwen's miscalculations (or inconsistent calculations) of cure amounts and its inconsistent decisions about whether to accept or reject the short payments. But the undisputed evidence established that by that time he was already in substantial breach and continued to be until the foreclosure sale—he stopped obtaining insurance for the property in October 2011, consistently and intentionally underpaid his monthly payments beginning in July 2012, and did not cure the deficiencies despite being notified numerous times that he needed to do so to avoid foreclosure. The district court held McNees' undisputed underpayments and failure to cure the resulting deficiency constituted a lack of substantial performance that barred his breach of contract claim.

McNees cites no authority holding that a residential mortgagor substantially performs under his mortgage contract despite failing to make required payments under the terms of the applicable deed of trust or note. And he does not expressly argue (nor did he in the district court) that his nonperformance was justified. He alleges the first few underpayments were inadvertent because he was unaware of the increase, complains that the LPI policy was too expensive, and takes issue with

11

Ocwen's inconsistent calculations of the cure amounts. But none of these disputes provides a legal justification for his prior and continued nonperformance. The deed of trust expressly prohibited him from making offsets based on his disagreement with the escrow calculation. *See* Aplt. App., Vol. 2 at 50 ("No offset or claim which Borrower might have . . . against Lender shall relieve Borrower from making payments due under the Note . . . ."). Moreover, the record establishes that the notices to cure did not seek cure amounts greater than what he actually owed, and the inconsistent cure amounts did not prevent him from curing his deficiency—all of the notices specifically advised him to contact the servicer for the most up-to-date amounts before sending payment, and he admitted he did not pay *any* amount demanded to cure the default.

Contrary to McNees' assertion, his loan servicing expert's opinion that he "seems to have in good faith attempted to submit payments" in 2013, *id.*, Vol. 3 at 185, does not undermine the district court's conclusion that the undisputed evidence established McNees failed to meet the substantial performance requirement both before and during Ocwen's alleged breaches. The expert opined that Ocwen's inconsistent cure figures were based on "bad math," *id.*, and that Ocwen "did not properly service" the mortgage in a number of respects, *id.* at 186. But he did not opine, as McNees says he did, that McNees "did in fact 'substantially comply'" with the contract, or that Ocwen's "incompetence" "prevented [him] from fully complying." Aplt. Opening Br. at 21. Indeed, the expert testified that making mortgage payments in an amount less than the amount due is not a good faith effort

12

to comply with a mortgage contract, that he was not aware of any basis for McNees to pay an amount less than the full amount reflected on his statements, and that the parties' contract prohibited him from "exercising a unilateral setoff in his monthly payment" if he concluded the amount "being charged was greater than what he thought he should be charged." Aplt. App., Vol. 3 at 214; *see also id.* at 203, 209, 213. While the expert's opinion may have raised a genuine issue of material fact about whether Ocwen serviced McNees' loan properly, it did not show there was a genuine dispute about whether he substantially performed his obligations under the contract. *See Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999) (explaining that an expert opinion is not sufficient to overcome summary judgment if it fails to raise a genuine issue of material fact).

### III.   Summary Judgment on CCPA claim

To prove a CCPA claim, a plaintiff must show the defendant engaged in an unfair or deceptive trade practice that "significantly impacts the public as actual or potential consumers of the defendant's . . . services" and that the plaintiff was injured by the challenged practice. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). The public impact element is the one at issue here. To survive summary judgment, McNees needed to present actual evidence of impact on consumers beyond a private wrong to him. *See Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1174 (10th Cir. 2008). Presuming or suspecting that others were affected "is insufficient." *Id.* (affirming summary judgment on CCPA claim where plaintiffs did "not direct us to any record evidence suggesting

13

that anyone other than [plaintiffs] were harmed by . . . the alleged practice or that the alleged practice has the potential to impact the public in the future").

To show public impact, McNees claimed Ocwen committed similar loan servicing errors in similar ways against other Colorado residential mortgage consumers, resulting in similarly improper foreclosures. He posited three theories to support his public impact argument. The district court concluded, and we agree, that none was sufficient to survive summary judgment.

First, relying on the Colorado-specific notice of default letters Ocwen sent to him with incorrect cure figures and an Ocwen representative's testimony that Ocwen initiated about 2,700 single-family residential foreclosures in Colorado between 2013 and 2016, McNees claimed the other borrowers subject to foreclosure also received inaccurate cure figures. But he presented no actual evidence supporting that presumption. Thus, the district court correctly concluded that, even if providing a borrower with notices containing inaccurate cure figures is a deceptive trade practice within the meaning of the CCPA, McNees' speculation that Ocwen sent other borrowers such notices was insufficient as a matter of law to show the requisite public impact. *See id.*

Second, McNees argued Ocwen's failure to specify his regularly expected monthly payment amount on his March through December 2013 statements was deceptive and that other borrowers were likely deceived by the same deficiency in their monthly statements. The district court concluded that a reasonable juror could not find those account statements deceptive within the meaning of the CCPA given

14

that Ocwen had notified McNees of the regular expected monthly payment in its February 2013 escrow recalculation statement, and the March through December 2013 statements reflected the full monthly amount, albeit broken down into separate line items. McNees does not challenge that conclusion on appeal, but contends the alleged flaws in the statements give rise to a CCPA claim because other Colorado borrowers may have been similarly confused or misled by the particulars of their monthly statements. But again, he presented no evidence to support that theory, and his arguments about deficiencies in his own monthly statements do not establish the requisite public impact to support a CCPA claim. *See Rhino Linings*, 62 P.3d at 149 ("[I]f a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA.").

Finally, McNees attempted to bolster his public impact argument by pointing to newspaper articles about two federal lawsuits filed against Ocwen. The district court declined to consider this evidence, concluding it was inadmissible. McNees does not directly challenge the court's inadmissibility determination on appeal, but he relies on the other-lawsuit evidence in attacking the court's summary judgment ruling. Assuming that constitutes a challenge to the court's evidentiary ruling, it fails.

"We review a district court's evidentiary rulings at the summary judgment stage for abuse of discretion." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). The district court's task in ruling on a summary judgment motion is to "determine whether genuine issues of material fact

15

make a jury trial necessary," and in doing so, "a court necessarily may consider only the evidence that would be available to the jury." *Id.* "At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial," but "the content or substance of the evidence must be admissible." *Id.* (internal quotation marks omitted).

McNees sought to rely on the mere existence of the other lawsuits to support his CCPA claim. But he did not explain the connection between the claims and underlying facts in those lawsuits and the facts he relied on to support his CCPA claim. And even after defendants challenged the admissibility of the other-lawsuit evidence in their MSJ, McNees did not explain why the evidence should be admissible or argue that he might introduce admissible evidence regarding those lawsuits at trial. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Under those circumstances, the district court did not abuse its discretion by concluding the evidence could not be used to establish a genuine issue of material fact regarding the public impact element of McNees' CCPA claim.[2] *See Argo*, 452 F.3d at 1200 (upholding summary judgment stage inadmissibility determination where plaintiff failed to establish personal knowledge supporting

---

[2] Contrary to McNees' contention, the district court's conclusion that the evidence of other litigation was inadmissible does not mean the court failed to consider the evidence in the light most favorable to McNees. This contention conflates two distinct concepts: whether evidence is admissible and whether the admissible evidence gives rise to a disputed factual issue.

16

statement in his affidavit about his employer's treatment of other employees); *see also Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (per curiam) (affirming ruling at trial excluding plaintiff's "brief summary of claims, lawsuits, and complaints . . ., which amounts to nothing more than a summary of allegations by others which constitute hearsay").

## Conclusion

The district court's dismissal and summary judgment orders are affirmed.

Entered for the Court

Allison H. Eid
Circuit Judge

17